IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No: 7:17-CV-0045

| | |
|---|---|
| THE BIG TEN CONFERENCE, INC., | |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| CESAR L. RODRIGUEZ, an individual and B10XB INC., | |
| Defendants. | |

## **COMPLAINT**

Plaintiff, THE BIG TEN CONFERENCE, INC. (the "Conference"), through its attorneys, complains of defendants CESAR L. RODRIGUEZ ("Mr. Rodriguez") and B10XB INC. ("B10xB") (Mr. Rodriguez and B10XB Inc. are collectively referred to as "Defendants" and each as a "Defendant" herein) as follows:

1.     This is an action for an injunction and money damages arising from Defendants' willful trademark infringement, trademark dilution, deceptive business practices, and unfair competition.  Specifically, this action arises out of Defendants' operation of an online marketing advice and self-help business called "B10xB," the mission of which is to "turn you into a Fearless, Bolder & More Badass version of yourself" by selling merchandise as well as access to online seminars and training modules.  (*See* Figure 1).  The Conference, on the other hand, is an athletic association of fourteen member universities and has invested significant resources to maintain and protect the "Big Ten" name, the "B1G" logo, and the "Big Ten Conference" as an organization and as a brand.  In addition to sponsoring athletic competitions among its member schools, the Conference sells athletic apparel and conducts educational programs and seminars.



**Figure 1**
Source: facebook.com/B10xB (last visited Nov. 7, 2016)

2.      Defendants' business is focused on selling access to training seminars, conference sessions, and instructional materials designed to teach subscribers how to be "just a little bit bolder" in their approach to self-promotion, prospecting, marketing, and networking.  In connection with this business, Defendants also sell athletic apparel and merchandise featuring the "B10xB"mark.

3.      To promote his business, Mr. Rodriguez has registered and is using the domain name <b10xb.com> and is operating a number of "B10xB" branded social media pages, including pages on Facebook, Twitter, Instagram, and YouTube.  Mr. Rodriguez has also sought to register the mark "B10XB" with the United States Patent and Trademark Office ("USPTO")

for use in connection with "athletic shirts; caps; hooded sweat shirts; pants; polo shirts; shirts; short-sleeved shirts; sweat shirts; sweatpants; t-shirts; wristbands". (*See* <u>Exhibit A</u>, Application No. 86910297).

4.       On information and belief, Defendants reach thousands of individuals through the <b10xb.com> website and related social media pages. Specifically, the "B10xB" Facebook page has over 1,300 "likes," the "B10xB" Twitter page has approximately 100 followers, the "B10xB" Instagram page has 17,700 followers, and several of Defendants' "B10xB" YouTube videos have received over 30,000 views—with some receiving more than 100,000 views. Defendants also sell infringing merchandise through an online store located on the "B10xB" website—including T-shirts and wristbands that feature the "B10xB" name. Defendants' website and social media pages disclose that they plan to offer additional "B10xB" merchandise for sale in the future.

5.       In an attempt to put an end to Defendants' infringement and dilution of the Conference's valuable trademarks, the Conference issued a number of letters to Mr. Rodriguez over the course of nearly six months, demanding that he cease use of "B10xB" as a trademark and as a domain name, and cease the offering of services and sales of merchandise featuring the "B10xB" trademark. Mr. Rodriguez at times strung the Conference along, promising to respond to the Conference's letters personally or through counsel, and at other times ignored the Conference's letters. To date, the Conference has not received a substantive response from Mr. Rodriguez or any counsel representing him. The Conference now brings this action to cease the ongoing and irreparable damage it has suffered and will continue to suffer as a result of the Defendants' blatant disregard for the Conference's trademark rights.

## THE PARTIES

6.     The Conference is a Delaware non-profit corporation with its principal place of business at 5440 Park Place, Rosemont, Illinois 60018.

7.     On information and belief, Defendant Cesar L. Rodriguez (also known as Cesar L. Rodriguez-Matos), is an individual residing at 4008 Chandler Drive, Wilmington, North Carolina 28405.

8.     On information and belief, Defendant B10xB Inc. is a corporation registered with the North Carolina Secretary of State on September 16, 2016 and having a principal place of business at 1141 Vanderhorst Place, Wilmington, NC 28405. On information and belief, Mr. Rodriguez is the principal shareholder and registered agent of B10xB.

9.     Defendants operate a website (<b10xb.com>), a Facebook account (<facebook.com/B10xB>), a Twitter account (<twitter.com/b10xbs>), an Instagram account (<instagram.com/b10xb/?hl=en>), and Youtube channels (<youtube.com/channel/UC6aKgRZhZf5yQOV21DTbg9w> and <youtube.com/channel/UC8cEMecOM1KJzFk8kfm_HEg>). On information and belief, Mr. Rodriguez has registered the domain name <b10xb.com> using the Conference's trademarks without permission, and through this website Defendants sell infringing merchandise and advertise and sell services, including training seminars, conference sessions, and instructional materials related to self-promotion, prospecting, marketing, and networking.

## JURISDICTION AND VENUE

10.     This is an action for trademark infringement and unfair competition. This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, et. seq. (the "Lanham Act").

11. This Court has jurisdiction over the subject matter of this action pursuant to at least 15 U.S.C. § 1121 (actions arising under the Lanham Act) and 28 U.S.C. §§ 1331, 1338 and 1367.

12. This Court has personal jurisdiction over Defendants based upon their contacts with this forum, including at least regularly and intentionally doing business here and committing acts giving rise to this lawsuit here. Defendants transact or have transacted business in the United States and within this judicial district for personal gain and profit, and are subject to the jurisdiction of this Court at least by having directly infringed the subject U.S. Trademark Registrations owned by the Conference, and such infringement has taken place within the United States and the Eastern District of North Carolina. Defendants purposefully availed themselves of the benefits and protections of this forum, and the harm caused by Defendants has been and will be suffered in this forum State and in this judicial district, among others.

13. Venue is proper in this judicial district pursuant to at least 28 U.S.C. §§ 1391(b) and (c).

## THE CONFERENCE AND ITS TRADEMARKS

14. Operating under the name "Big Ten" since at least as early as 1917, the Conference is a collegiate athletic conference comprising an association of fourteen world-class academic institutions, including the University of Michigan; University of Iowa; Michigan State University; University of Illinois at Urbana-Champaign; Indiana University; University of Minnesota-Twin Cities; University of Maryland; University of Nebraska-Lincoln; Northwestern University; The Ohio State University; Pennsylvania State University; Purdue University; Rutgers University; and University of Wisconsin-Madison. The Conference has been in

existence since 1895, and it has remained a national leader in intercollegiate athletics for 120 years.

15.     For nearly a century, the Conference has taken steps to maintain and protect its intellectual property rights and to ensure that the public associates its trademarks with genuine Conference products and services and activities that are commensurate with the values surrounding university athletics.  Indeed, the Conference owns and maintains a number of U.S. trademark registrations covering a broad range of goods and services (collectively referred to herein as "the Big Ten Marks").  The Big Ten Marks include, but are not limited to: (1) U.S. Registration No. 4,050,908 for the B1G logo covering "*association services, namely, promoting the interests of member institutions participating in various sports attractions*"; (2) U.S. Registration No. 4,214,763 for the B1G logo covering "*wearing apparel, namely, shirts and jackets*"; (3) U.S. Registration No. 4,328,739 for the B1G logo covering "*publications, namely, books, pamphlets, brochures, newsletters, journals, magazines, handbooks, manuals and programs, all relating to athletic activities*"; and (4) U.S. Registration No. 4,184,017 for the B1G logo covering "*educational services, namely, conducting clinics and classes in the field of athletics and drug abuse prevention, and distributing course materials in connection therewith.*" The USPTO describes each of the B1G logos as follows: "The mark consists of a stylized letter 'B', followed by a stylized number '1', followed by a stylized letter 'G' such that when read together, the letters and number spell 'BIG' and the stylized number '1' and letter 'G' spell the number '10.'"  Copies of these registrations are attached as <u>Exhibits B, C, D,</u> and <u>E</u> hereto.

16.     The Conference also owns the following registrations: (1) U.S. Registration No. 1,858,081 for the word mark BIG TEN covering, as relevant, "*wearing apparel; namely, jerseys, warm-ups, shirts, shorts, jackets*"; and (2) U.S. Registration No. 1,969,353 for the word mark

BIG TEN covering, as relevant, "*publications, namely books, pamphlets, brochures, newsletters, journals, magazines, handbooks, manuals, and programs relating to athletic activities.*" Copies of these registrations are attached hereto as Exhibits F and G. The Conference has invested significant resources to promote the "Big Ten" name, the "B1G" logo, and the "Big Ten Conference" as an organization and as a brand. The Conference's investments in promoting its goods and services in connection with the Big Ten Marks include national television advertisements, prominent displays of the Big Ten Marks at the Conference's nationally televised athletic events, newspaper and magazine ads, promotional materials and merchandise distributed at universities throughout the United States, online advertisements, and the like.

17.    As a result of the Conference's significant investments and prominent and consistent promotion of its goods and services under the Big Ten Marks for nearly a century, the Big Ten Marks have become famous. Indeed, the Big Ten Marks were famous long before Defendants commenced their infringing activities that form the basis of this Complaint.

## DEFENDANTS' INFRINGEMENT OF THE BIG TEN MARKS

18.    On information and belief, Mr. Rodriguez first registered the domain name <b10xb.com> on or about April 10, 2011. This domain name is confusingly similar to the Big Ten Marks, particularly in light of the USPTO's description of the stylized Big Ten Marks as "a stylized letter 'B,' followed by a stylized number '1', followed by a stylized letter 'G'" such that "the stylized number '1' and 'G' spell the number '10.'" (*See* Exs. B-E).

19.    Defendants are using the domain name <b10xb.com> in connection with a website titled "B10xB" that is dedicated to promoting sales of the Defendants' goods (athletic apparel) and services (instructional seminars and videos). Defendants maintain an online store through which they sell athletic apparel prominently displaying the "B10xB" mark and logo.

Exemplary images of the <b10xb.com> website are set forth in <u>Figures 2</u>, <u>3</u>, and <u>4</u> below. Mr. Rodriguez also promotes the B10xB brand and business through his personal website, which on information and belief Mr. Rodriguez registered, owns, and operates. An exemplary image of Mr. Rodriguez's website is set forth in <u>Figure 5</u> below. Using the <b10xb.com> domain name and the "B10xB" mark, Defendants are dedicated to selling "B10XB"-branded merchandise as well as advertising, promoting, and delivering their "B10XB" services, including marketing training videos and an online curriculum teaching self-promotion, marketing, and prospecting techniques.



**Figure 2**
Source: http://b10xb.com/(last visited Nov. 7, 2016)



**B10xB Will Make You Ten Times Bolder and More Confident**

JOIN OUR PRE-LAUNCH MAILING LIST

**Figure 3**
Source: http://b10xb.com/home/ (last visited Nov. 7, 2016)



**Figure 4**
Source: http://b10xb.com/shop/ (last visited Nov. 7, 2016)

20.　Defendants similarly operate Facebook, Twitter, and Instagram pages under the name "B10xB."　(*See*, *e.g.*, Figures 5-7).　On these social media pages, Defendants promote their online seminars and curriculum for commercial gain while displaying merchandise—including T-shirts, wristbands, and other athletic wear—prominently featuring the "B10xB" mark.　On these social media pages, the "B10xB" mark is prominently displayed both on the merchandise that Defendants offer for sale and sell and in images posted to these pages that often feature athletes and/or athletic competitions.　(*See*, *e.g.*, Figure 7).　Further, the "B10xB" Twitter and Instagram page descriptions prominently state that Defendants intend to launch a more extensive clothing line branded under the "B10xB" mark.　(*See* Figures 7, 8).



**Figure 5**
Source: https://www.facebook.com/B10xB/ (last visited Nov. 7, 2016)



**Figure 6**
Source: https://twitter.com/b10xb (last visited Nov. 7, 2016)



**Figure 7**
Source: https://www.instagram.com/b10xb/?hl=en (last visited Nov. 7, 2016)



**Figure 8**
Source: https://twitter.com/b10xb (last visited Nov. 7, 2016)

21.    As a result of these unauthorized uses of the infringing "B10xB" mark, which is confusingly similar to the Big Ten Marks, Defendants have conjured up a substantial fan base and following with over 17,700 followers on Instagram, 1,300 "likes" on Facebook, and hundreds of thousands of views of "B10xB"-branded YouTube videos.

22.    On information and belief, Defendants generate revenues from sales of athletic wear featuring the "B10xB" mark, from YouTube by virtue of hundreds of thousands of views received by the "B10xB"-branded videos, and from selling access to Defendants' "B10xB" self-actualization and prospecting seminars and related materials.    The <b10xb.com> and <cesarlrodriguez.com/b10xb-life-training> websites and related "B10xB" Facebook, Twitter,

Instagram and YouTube pages are devoted to generating commercial revenue by trading on the goodwill associated with the Big Ten Marks.

## THE CONFERENCE'S NUMEROUS ATTEMPTS TO RESOLVE THIS MATTER AMICABLY

23.     The Conference has expended great effort to resolve this matter amicably.  The Conference became aware of Defendants' infringing activities when, on February 20, 2016, Mr. Rodriguez filed an application with the USPTO to register the trademark B10XB in international class 25 for "*athletic shirts; caps; hooded sweat shirts; polo shirts; shirts; short-sleeved shirts; sweat shirts; sweatpants; t-shirts; wristbands.*"  (*See* Exhibit A, U.S. Application No. 86/910297).  On April 13, 2016, counsel for the Conference sent a letter to Mr. Rodriguez informing him that his activities constituted infringement of the Big Ten Marks.  In this initial letter, the Conference also requested that, among other things, Mr. Rodriguez agree to abandon the B10XB trademark application, cease any and all uses of the "B10xB" mark in connection with Defendants' business, merchandise and services, and transfer the <b10xb.com> domain name to the Conference.  Attached hereto as Exhibit H is a true and correct copy of the Conference's April 13, 2016 letter.

24.     Mr. Rodriguez did not substantively respond to the April 13, 2016 letter.  Indeed, Mr. Rodriguez's only response was by way of an email to counsel for the Conference in which he refused to open the electronic version of the letter because it "look[ed] like it could be a spam message with virus attachment to it."  Counsel for the Conference provided assurances that the email did not contain a malicious attachment and that the attachment was a communication from the Conference's attorneys, yet Mr. Rodriguez still did not respond.  Attached hereto as Exhibit I is a true and correct copy of this correspondence.  In addition to sending the letter electronically,

counsel for the Conference mailed the letter by UPS. (*See* <u>Exhibit H</u>). Mr. Rodriguez did not respond to that communication either.

25.     On May 6, 2016, counsel for the Conference again sent a letter to Mr. Rodriguez, informing him that his activities constitute infringement of the Big Ten Marks and reiterating the Conference's requests. Attached hereto as <u>Exhibit J</u> is a true and correct copy of this May 6, 2016 letter. Mr. Rodriguez again did not respond to the Conference's letter.

26.     On June 7, 2016, counsel for the Conference sent a third letter to Mr. Rodriguez, informing him again that his activities constitute infringement of the Big Ten Marks and reiterating the Conference's requests that he cease all infringing activities. That letter specifically addressed Mr. Rodriguez's avoidance tactics and warned him against "[c]ontinuing to ignore the Conference's repeated overtures to you to resolve the dispute amicably." Attached hereto as <u>Exhibit K</u> is a true and correct copy of this June 7, 2016 letter. Again, rather than respond substantively, Mr. Rodriguez demurred, this time saying that his "attorney's [sic] will be in touch with you regarding this matter." Mr. Rodriguez's pattern of avoidance continued, and no attorneys for Defendants ever contacted counsel for the Conference, nor did Mr. Rodriguez provide their contact information. Attached hereto as <u>Exhibit L</u> is a true and correct copy of this correspondence.

27.     Having not received a substantive response from Defendants or their representatives after issuing three letters over the course of nearly three months, counsel for the Conference sent a fourth letter on July 21, 2016, noting the Conference was prepared "to seek all available remedies in full," including "filing a lawsuit in federal court." Attached hereto as <u>Exhibit M</u> is a true and correct copy of this July 21, 2016 letter.

28.     Defendants did not respond to this letter, and the Conference issued a final letter to Defendants on November 28, 2016 attaching a draft complaint indicating that the Conference would file and serve the complaint if Defendants did not respond agreeing to cease use of the Conference's trademarks. Attached hereto as Exhibit N is a true and correct copy of this November 28, 2016 letter.

29.     As of the time of filing this Complaint, neither Mr. Rodriguez nor B10xB have responded to the Conference's July 2016 or November 2016 letters, nor have Defendants provided any assurances whatsoever that they will cease the infringing activities that they now have had notice of for over ten months.

30.     Over the last ten months, the Conference has gone to great lengths to resolve this matter amicably.  Defendants have ignored the Conference's multiple requests for Defendants to cease their infringing activities, and accordingly, the Conference is left with no option other than to file this lawsuit to protect its valuable trademark rights.

31.     Defendants' knowing and intentional infringement of the Conference's trademarks has caused and continues to cause confusion among consumers as to the source, sponsorship and/or affiliation of Defendants' business, the "B10xB" website, social media pages, self-actualization and marketing seminars, and merchandise with the goods and services offered by the Conference, and has harmed and will continue to harm the Conference's reputation and the Conference's famous "Big Ten" brand.  Additionally, Defendants' knowing and intentional infringement of the Conference's trademarks has diluted and continues to dilute the famous Big Ten Marks by blurring.

## COUNT I: TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT, 15 U.S.C. § 1114(1)

32.　　The Conference repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 31 of this Complaint.

33.　　The Conference has been operating under the name "Big Ten" since as early as 1917 and has exclusive rights in and to the Big Ten Marks as early as this date.

34.　　The Big Ten Marks are federally registered and are entitled to protection under both federal law and common law. The Conference has extensively and continuously promoted and used the Big Ten Marks in the United States and worldwide. Through that extensive and continuous use and the Conference's significant investments, the Big Ten Marks have become a famous and well-known source indicator of the Conference and its goods and services.

35.　　The registrations for the Big Ten Marks cover a wide range of goods and services including, but not limited to, publications, entertainment services, wearing apparel, educational seminars and associated materials, and online retail store services.

36.　　Defendants' use of the Big Ten Marks constitutes trademark infringement of the Big Ten Marks, including U.S. trademark registration numbers 4,050,908, 4,214,763, 4,328,739, 4,184,017, 1,969,353, 1,858,081, and 1,969,353, in violation of 15 U.S.C. § 1114.

37.　　Defendants' unauthorized use of the Big Ten Marks is likely to cause, has caused and is causing consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' website, social media pages, consumer merchandise, and services by creating the false and misleading impression that Defendants' website, social media pages, consumer merchandise and self-promotion, prospecting, marketing, and networking services are authorized by, affiliated with or otherwise approved by the Conference.

38.     Defendants had actual and/or constructive knowledge of the Conference's trademark rights prior to using or continuing to use the Big Ten Marks.  Defendants' infringing uses of the Big Ten Marks have been intentional, willful and malicious.  Defendants' bad faith is evidenced at least by Mr. Rodriguez's evasive or non-existent responses to the Conference's *__five__* cease-and-desist letters.

39.     The willful and intentional nature and the reckless disregard for the most basic level of diligence by Defendants makes this trademark infringement an exceptional case pursuant to 15 U.S.C. § 1117(a) and, accordingly, the Conference is entitled to actual or enhanced damages, costs and reasonable attorneys' fees.

40.     As a result of Defendants' trademark infringement, the Conference has suffered damages in an amount to be determined at trial.

41.     On information and belief, Defendants have gained profits by virtue of infringing the Big Ten Marks.

42.     The Conference has not consented to Defendants' use of the Big Ten Marks in any way.

43.     The Conference has suffered and will continue to suffer irreparable harm to its business, reputation and goodwill as a result of Defendants' actions, and the Conference lacks an adequate remedy at law to compensate for this harm and damage.  Accordingly, the Conference is entitled to an injunction by the Court pursuant to 15 U.S.C. § 1116(a).

44.     The Conference is further entitled under 15 U.S.C. § 1118 to an order providing for the destruction of Defendants' infringing consumer merchandise and all other materials displaying the infringing and confusingly similar "B10xB" mark.

## COUNT II: TRADEMARK DILUTION
## UNDER THE LANHAM ACT, 15 U.S.C. § 1125(c)

45.     The Conference repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 44 of this Complaint.

46.     Defendants' prominent display of the Big Ten Marks on websites and social media pages and offers to sell, sales, distribution, and advertisements of consumer merchandise and self-promotion, prospecting, marketing, and networking services and related materials using the "B10xB" mark violates Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

47.     The Big Ten Marks are federally registered and are entitled to protection under both federal law and common law.  The Conference has extensively and continuously promoted and used the Big Ten Marks in the United States and worldwide.

48.     Through the Conference's extensive and continuous use and significant investments, the Big Ten Marks have become a famous and well-known indicator of the origin and quality of the Conference and its goods and services.  The Big Ten Marks became famous well before Defendants commenced their infringing activities.  The Big Ten Marks are inherently distinctive and have also acquired secondary meaning in the marketplace.

49.     Defendants' unauthorized uses of the Big Ten Marks are likely to cause, have caused, and continue to cause dilution of the famous Big Ten Marks by eroding the public's exclusive association of the famous Big Ten Marks with the Conference and by lessening the capacity of the famous Big Ten Marks to identify and distinguish the Conference's goods and services.

50.     On information and belief, Defendants' infringing and diluting uses of the Big Ten Marks have been intentional, willful, and malicious.  Defendants' bad faith is evidenced at

least by Mr. Rodriguez's evasive and/or non-existent responses to the Conference's *five* cease-and-desist letters.

51. The willful and intentional nature and the reckless disregard for the most basic level of diligence by Defendants makes this trademark dilution an exceptional case pursuant to 15 U.S.C. § 1117(a) and, accordingly, the Conference is entitled to actual or enhanced damages, costs and reasonable attorneys' fees.

52. As a result of Defendants' trademark dilution, the Conference has suffered damages in an amount to be determined at trial.

53. On information and belief, Defendants have gained profits by diluting the Big Ten Marks.

54. The Conference has not consented to Defendants' use of the Big Ten Marks in any way.

55. The Conference has suffered and will continue to suffer irreparable harm to its business, reputation and goodwill as a result of Defendants' actions, and the Conference lacks an adequate remedy at law to compensate for this harm and damage. Accordingly, the Conference is entitled to an injunction by the Court pursuant to 15 U.S.C. § 1116(a).

56. The Conference is further entitled under 15 U.S.C. § 1118 to an order providing for the destruction of Defendants' infringing consumer merchandise and all other materials displaying the infringing and confusingly similar "B10xB" mark.

## COUNT III: UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER N.C. GEN. STAT. § 75-1.1

57. The Conference repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 56 of this Complaint.

58.     The Conference has not consented to Defendants' use of the infringing and confusingly similar "B10xB" mark.

59.     Defendants' use of the same on websites, social media pages, and merchandise and in connection with self-promotion, prospecting, marketing, and networking services and related materials has the capacity or tendency to deceive consumers as to the source, sponsorship, or affiliation between the goods and services offered by the Conference and those offered by Defendants.

60.     Defendants' use of the same has been in or affecting commerce, as at least Defendants' sales of merchandise and self-promotion, prospecting, marketing, and networking services and related materials constitute commercial activity for monetary gain in which Defendants can fairly be characterized as sellers.

61.     As a result of Defendants' conduct, the Conference has suffered damages in an amount to be determined at trial.

62.     Defendants had actual knowledge of the Conference's trademark rights prior to using, and/or while continuing to use, the "B10xB" mark, resulting in willful and intentional conduct.  Accordingly, the Conference is entitled to actual and treble damages, costs and reasonable attorneys' fees under N.C. Gen. Stat. § 75-16 and § 75-16.1.

63.     The Conference has suffered and will continue to suffer irreparable harm to its business, reputation and goodwill as a result of Defendants' actions, and the Conference lacks an adequate remedy at law to compensate for this harm and damage.  Accordingly, the Conference is entitled to an injunction by the Court.

## COUNT IV: COMMON LAW UNFAIR COMPETITION

64.     The Conference repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 63 of this Complaint.

65.     The Conference has not consented to Defendants' use of the infringing and confusingly similar "B10xB" mark.

66.     Defendants' use of the same is with the intent to deceive the public into believing Defendants' website, social media pages, goods, and services are affiliated with and/or endorsed or sponsored by the Conference. Defendants' unauthorized use of the "B10xB" mark constitutes passing off and unfair competition in violation of the common law of the state of North Carolina.

67.     Defendants had actual knowledge of the Conference's trademark rights prior to using, or while continuing to use, the "B10xB" mark, resulting in willful and intentional conduct. Accordingly, the Conference is entitled to actual damages, costs and reasonable attorneys' fees.

68.     As a result of Defendants' conduct, the Conference has suffered damages in an amount to be determined at trial.

69.     The Conference has suffered and will continue to suffer irreparable harm to its business, reputation and goodwill as a result of Defendants' actions, and the Conference lacks an adequate remedy at law to compensate for this harm and damage. Accordingly, the Conference is entitled to an injunction by the Court.

## PRAYER FOR RELIEF

WHEREFORE, as a result of the unlawful acts of Defendants set forth in each of the counts above, the Conference requests that the Court enter a judgment against Defendants:

(a) Preliminarily and permanently enjoining Defendants, their agents, servants, employees, officers and all persons in active concert and participation with them:

i. From using the Big Ten Marks or any marks similar thereto in connection with any websites or social media pages, including, without limitation, <b10xb.com>, <cesarlrodriguez.com/b10xb-live-training>, and the related Facebook, Twitter, Instagram and YouTube pages used to promote Defendants' goods and services;

ii. From using the Big Ten Marks or any marks similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of clothing items, athletic apparel, or other consumer merchandise and the advertising for sale, promotion or sale of self-promotion, prospecting, marketing, and networking services and related materials;

iii. From using any logo, trade name, trademark or trade dress which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Defendants are sponsored by, authorized by, or in any way associated with the Conference; and

iv. From infringing the Conference's trademarks.

(b) Ordering the immediate destruction of all goods bearing the "B10xB" mark or any marks that are otherwise the same or similar to the Big Ten Marks pursuant to 15 U.S.C. § 1118.

(c) Pursuant to 15 U.S.C. § 1116(a), ordering Defendants to file with the Court and serve upon the Conference's counsel, within thirty (30) days after service of the order of

injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

(d) Finding that, by the acts complained of above, Defendants have infringed the Conference's federally registered trademarks in violation of 15 U.S.C. § 1114.

(e) Finding that, by the acts complained of above, Defendants have diluted the Big Ten Marks by blurring in violation of 15 U.S.C. § 1125(c).

(f) Finding that, by the acts complained of above, Defendants have engaged in unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75.11.

(g) Finding that, by the acts complained of above, Defendants have engaged in unfair competition under common laws of the State of North Carolina.

(h) Finding that by the acts complained of above, Defendants have willfully infringed the Big Ten Marks.

(i) Ordering Defendants to pay the Conference:

    i.   The Conference's actual or enhanced damages incurred by virtue of Defendants' infringement and dilution of the BIG TEN Marks and Defendants' unfair competition; and

    ii.  The Conference's costs and reasonable attorneys' fees incurred in this matter.

(j) Awarding the Conference pre-judgment and post-judgment interest against Defendants.

(k) Awarding the Conference such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

The Conference hereby demands a trial by jury.

This the 28th day of February, 2017.

**MAYER BROWN LLP**

 /s/ Richard M. Assmus

Richard M. Assmus (specially appearing per
     Local Civil Rule 83.1(e))
     Illinois State Bar No. 6255570
     Telephone: (312) 701-8623
     rassmus@mayerbrown.com

Kristine M. Young (specially appearing per
     Local Civil Rule 83.1(e))
     Illinois State Bar No. 6301230
     Telephone: (312) 701-8162
     kyoung@mayerborwn.com

71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600


**ALEXANDER RICKS PLLC**

 /s/ Mary K. Mandeville

Mary K. Mandeville
N.C. State Bar No. 15959

4601 Park Road, Suite 580
Charlotte, North Carolina 28209
Telephone:    (704) 200-2635
Facsimile:     (704) 365-3676
mary@alexanderricks.com


*Attorneys for Plaintiff The Big Ten Conference, Inc.*